IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:13-CR-305-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) **ORDER** |
| BASIT JAVED SHEIKH, | ) |
| Defendant. | ) |

This matter is before the Court on defendant's motion to revoke detention order and request for hearing [DE 28]. The government opposes the motion. For the reasons stated herein defendant's motion is DENIED.

## BACKGROUND

Defendant is charged with attempting to provide material support to a designated terrorist organization, in violation of 18 U.S.C. § 2339B. At defendant's initial appearance on November 4, 2013, the government moved for detention pending trial. [DE 5]. After the subsequent detention hearing, which took place on November 8, 2013, Magistrate Judge William A. Webb granted the government's motion for detention and remanded defendant to the custody of the U.S. Marshall pending trial. [DE 17]. On December 5, 2013, the defendant filed a motion to this Court seeking a review of the detention decision. [DE 28]. Although defendant previously represented himself pro se, he is now represented by counsel.

## DISCUSSION

I.  LEGAL STANDARDS.

When acting on a motion to revoke a magistrate's detention order brought pursuant to 18 U.S.C. § 3145(b), a district court reviews the order of detention *de novo* and makes an independent determination whether release on conditions is appropriate. *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985).

The Bail Reform Act, 18 U.SC. § 3141 et seq., states that a defendant may be detained pending trial where the United States shows "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person of the community." 18 U.S.C. § 3142(e) and (f). Detention can be based on a showing by the United States of either of the following: (1) that, beyond a preponderance of the evidence, the defendant poses a risk of flight, *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996); or (2) that, by clear and convincing evidence, the defendant poses a risk to the safety of any person or the community. 18 U.S.C. § 3142(f). The Bail Reform Act codifies a number of factors that courts should consider when assessing whether detention is appropriate. *See* 18 U.S.C. § 3142(g). Congress has also created a rebuttable presumption that detention is appropriate in cases where, such as here, defendant has been charged with certain offenses. 18 U.S.C. § 3142(e)(3).

II.  THE PRESUMTPION.

Defendant has been charged by the grand jury with attempting to provide material support to a designated terrorist organization in violation of 18 U.S.C. § 2339B. Under the Bail Reform Act, once probable cause has been established that certain crimes were committed, a rebuttable presumption is established that "no condition or combination of conditions will reasonable assure the appearance of the person as required and the safety of the community. . . ."

18 U.S.C. § 3142(e)(3). It has long been settled by the Supreme Court that a grand jury indictment conclusively determines the existence of probable cause. *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (citing *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)). The statute lists as "presumption" crimes any offense listed in 18 U.S.C. § 2332b(g)(5)(B) that is punishable by a maximum term of imprisonment of ten years or more. 18 U.S.C. § 3142(e)(3)(c). Section 2339B is listed in section 2332b(g)(5)(B) and is punishable by a maximum term of imprisonment of fifteen years. 18 U.S.C. § 2339B. Thus defendant has been charged with a crime that carries a presumption of detention.

"The § 3142(e) presumption imposes on the defendant only the burden of *production* of proof." *United States v. Tyson*, 2011 U.S. Dist. LEXIS 109100, *3 (E.D.N.C. Sept. 23, 2011). "Although most rebuttable presumptions found in the law disappear when any evidence is presented by the opponent of the presumption, the rebuttable presumption of § 3142(e) is not such a 'bursting bubble.'" *United States v. Garcia*, 801 F. Supp. 258, 261 (S.D. Iowa 1992) (citing *United States v. Jessup*, 757 F.2d 378, 383 (1st Cir. 1985). Thus, to rebut the presumption, the defendant must produce some evidence while the judge remembers the fact that Congress found certain offenders to pose special risks of flight. *Id.* at 261–62. Indeed, the Bail Reform Act specifically compels courts to take into account whether a "Federal crime of terrorism" has been charged when assessing detention issues. 18 U.S.C. § 3142(g)(1).

Here, the evidence defendant submitted at the detention hearing was not sufficient to rebut the presumption of detention. At the detention hearing, defendant proffered the testimony of his father as a third-party custodian and the testimony of his mother and sister as character witnesses. As a whole, the testimony established that defendant lived with these family members for the entirety of the relevant timeframe excepting a few weeks of overseas travel. Defendant

3

was living under the roof of his proposed third-party custodian when he committed the charged offense. Further, his family members admitted they were unaware of the conversations and conduct performed by defendant online which constitutes a large portion of the activity making up the crime alleged against him. [DE 36 at 11–18]. Defendant's mother's testimony focused on his depression issues and served to try to mitigate the misconduct of her son rather than to rebut the presumption of detention. [DE 36 at 83–84].

  III.  SECTION 3142(g) FACTORS.

Even assuming that enough evidence was put forward to rebut the presumption of detention, the factors enumerated in § 3142(g) compel detention. The Bail Reform Act provides four factors courts must consider in determining whether the pretrial detention standard is met; (1) the nature and circumstances of the offense charge, including whether the offense is a federal crime of terrorism; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). An assessment of these factors leads to the conclusion that the defendant's continued detention is appropriate.

    A.  Nature and Circumstances of the Offense Charged.

It is clear that the nature of the offense charged is very serious. Congress itself recognized the serious nature of terrorism by specifically compelling courts to consider whether the alleged crime is a "Federal crime of terrorism." 18 U.S.C. § 3142(g)(1). The allegation of such a crime

4
Case 5:13-cr-00305-BO   Document 38   Filed 01/10/14   Page 4 of 9

weighs heavily against the defendant. It is not a common violent crime, but rather terror that rips civilization's fabric. *United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1351 (M.D. Fla. 2003).

The indictment alleges that defendant sought to provide support to a designated terrorist organization known as the al-Nusrah Front, which is an alias for al-Qa'ida in Iraq. [DE 10]. The charge states that defendant attempted to provide support in the form of personnel, including himself. *Id.* Moreover, the allegation notes that defendant knew that this group had been designated as a terrorist organization or that it was an organization which had been engaged in terrorism or terrorist activity. *Id.* Special Agent Maslow testified at the detention hearing and provided evidence that the defendant had stated that he wished to join the terrorist group al-Nusrah Front in Syria, that he was eager to join violent jihad, that he wished to die as a martyr, that he would be willing to do anything for the mujahideen, that he desired weapons training, and that he was ready to fight. [DE 36 at 58–60]. Moreover, defendant attempted to travel overseas in order to achieve those desires immediately prior to his arrest. [DE 36 at 60]. The nature and circumstances underlying this charge is very serious and this factor weighs strongly in favor of the continued detention of defendant.

B. The Weight of the Evidence.

The weight of the evidence presented against defendant is strong. The government submitted live testimony by special agent Maslow at the defendant's detention hearing. Maslow testified regarding an investigation he participated in, evidence he and other Federal Bureau of Investigation ("FBI") agents obtained, and actions by the defendant he and other FBI agents personally observed. This included records from Facebook, Skype, and Time Warner Cable. These records confirmed that defendant was the user of certain online accounts. [DE 36 at 46–47]. Maslow also testified regarding statements made by the defendant through these accounts to

an FBI confidential human source, and an FBI online covert employee ("OCE"). The conversations took place over the internet and therefore exist in typed form. Within these conversations, defendant asserted that he held the al-Nusrah group in high esteem, he was aware of their terrorist activity, he was aware they had been designated by the United States as a terrorist organization, he wished to join al-Nusrah, he wished to assist the mujahideen in any way possible, he wished to travel to Syria, he wished to fight, and he wished to die a martyr. [DE 36 at 50–60]. According to Maslow, defendant devised a plan with the OCE to accomplish these things. Both defendant's family members and Maslow testified that defendant had traveled in the past to Turkey and was traveling to Lebanon on the day he was arrested. Maslow testified that in accordance with the plans made with the OCE, defendant purchased a ticket to travel to Lebanon, where he would obtain assistance in being smuggled into Syria. In apparent accordance with that plan, on November 2, 2013, defendant traveled to the Raleigh/Durham International Airport where he was subsequently arrested. [DE 36 at 60–61]. The weight of this expansive evidence is heavy and weighs in favor of defendant's continued detention.

        C.      The History and Characteristics of Defendant.

Although defendant has no criminal record, that is not the only consideration here. 18 U.S.C. § 3142(g). Defendant's mother testified that she believed defendant to be depressed, that he had problems, and that he spent all of his time on the internet. [DE 36 at 83–84]. Defendant's mother also described him as having anxiety, not listening to his mother and father, and being in need of a psychiatrist. [DE 36 at 83]. Defendant has previously traveled to Turkey, which borders Syria, [DE 36 at 85], and he has extended family members overseas. Defendant has surrendered his passport. Defendant currently holds no job. [DE 36 at 87]. The defendant's

mother also believes him to be unstable. [DE 36 at 88]. This factor also weighs in favor of the defendant's continued detention.

> D. Danger Posed by Defendant's Release.

Maslow's testimony displayed that the defendant is comfortable with extreme violence. Maslow discussed postings of violence by the defendant on his Facebook page including statements of support for such violence. [DE 36 at 47–49]. Further Maslow's testimony about defendant's past online comments indicate that the defendant is willing to fight and die for his cause. Finally, defendant poses a danger to foreign communities were he to flee the United States. *See United States v. Hir*, 517 F.3d 1081, 1088 (9th Cir. 2008) (finding this to be an appropriate consideration for a court to consider for bail purposes). The grand jury and the evidence submitted at the detention hearing show that defendant attempted to travel abroad with the intent to engage in violence. Defendant does pose a danger to the community if released and therefore this factor again weighs in favor of defendant's continued detention.

* * *

For the reasons expressed above, this Court finds that no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of other persons and the community at large. Defendant has failed to rebut the presumption of detention and even if he had, the § 3142(g) factors weigh against his release and in favor of his continued detention. Based on these factors, the United States has shown by clear and convincing evidence that the defendant poses a risk of flight. The nature and circumstances of the charged offense contain an intent to travel overseas. Defendant is familiar with such travel and has family members overseas. Aside from fleeing the country, defendant has a strong incentive to not appear for future hearings. The charges are serious, the evidence is strong and defendant faces up to 15

years' imprisonment. The United States has also shown by clear and convincing evidence the risk posed by defendant to the safety of any person or the community as demonstrated by his praise for extreme violence which clearly supports his intent in relation to the evidence of his attempt to travel internationally to engage in violence.

The alleged crime is serious and the Court recognizes the terrorist nature of the organization that the testimony presented strongly indicated defendant sought to join and provide assistance. Further the testimony indicated that defendant lacks focus and spends his days on the internet. These facts support the finding that defendant is both a flight risk and danger to the community. Taken together, the risk of flight and risk of danger to the community are simply too great to allow for defendant's pretrial release.

After reviewing the evidence *de novo*, this court finds no need to hold a hearing on the matter. The evidence available is sufficient and no further evidence is needed to support the decision of this Court.

## CONCLUSION

For the foregoing reasons, defendant's motion to revoke detention order is DENIED. Defendant is ORDERED to remain in the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of United States Court or on request of an attorney for the government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for a court appearance.

SO ORDERED, this __10__ day of January, 2014.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE