IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:13-CR-305-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) **O R D E R** |
| | ) |
| BASIT JAVED SHEIKH, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court on the government's motion to involuntarily medicate the defendant, Basit Javed Sheikh, in order to restore him to competency. [DE 89]. A hearing was held before the undersigned on September 29, 2015, in Raleigh, North Carolina. For the following reasons, the government's motion is granted.

BACKGROUND

Defendant Basit Javid Sheikh was charged via criminal complaint on November 4, 2013, with providing material support to a designated terrorist organization in violation of 18 U.S.C. § 2339(B). He was named in a single count indictment charging the same crime the following day. On March 20, 2014, defense counsel filed a motion for a psychiatric examination pursuant to 18 U.S.C. § 4241 to determine whether Mr. Sheikh was competent to stand trial. The Court granted the request and ordered an evaluation pursuant to 18 U.S.C § 4247(b). The examiner, Bureau of Prisons forensic psychologist Tanya Cunic, examined Mr. Sheikh at the Federal Medical Center at Butner, North Carolina (FMC-Butner) and concluded that Mr. Sheikh was competent to stand trial in a report dated May 22, 2014. Hearing no evidence to the contrary, the Court adopted her findings at a hearing on June 17, 2014. Discovery proceeded until defense counsel filed another

motion under § 4241 to determine defendant's competence on October 13, 2014. The Court again granted the request and ordered another evaluation under § 4247(b). This time, however, Dr. Cunic determined that Mr. Sheikh was not competent to stand trial. The Court adopted this finding, as the parties provided no evidence to the contrary. Following a hearing on January 7, 2015, the undersigned ordered Mr. Sheikh committed to the custody of the Bureau of Prisons for a period not to exceed 120 days in order to restore his competency or determine whether there was a substantial probability that his competency would be restored in the foreseeable future pursuant to 18 U.S.C. § 4241(d). The Court received a psychiatric evaluation on May 21, 2015, which concluded that Mr. Sheikh remained incompetent to stand trial, as he was unable to understand the nature and consequences of the proceedings against him and to assist in his defense. The report concluded that involuntary medication was the best course of action, and the government filed its request that Mr. Sheikh be involuntarily medicated pursuant to *Sell v. United States*, 539 U.S. 166, 179 (2003), on July 3, 2015.

The Court appointed a guardian ad litem[1] and held a hearing on September 29, 2015, on the government's motion. The government presented three witnesses: clinical psychologist Brianna Grover, who was doing a post-doctoral residency at FMC-Butner the time of Mr. Sheikh's evaluation, FMC-Butner forensic psychologist Angela Walden-Weaver, and FMC-Butner staff psychiatrist Alden Williams. The Court qualified all three as expert witnesses.

Dr. Grover testified that she reviewed a number of collateral sources, including previous forensic evaluations and family history, but that Mr. Sheikh would not cooperate with either psychological testing or a personal interview despite multiple attempts. Mr. Sheikh also refused

---

[1] The guardian ad litem prepared a report which concluded that involuntary medication was in Mr. Sheikh's best interest. The Court takes note of the guardian ad litem's conclusion, but does not rely on it in determining whether the government has met its burden to prove each of the requisite factors.

to speak to his family or leave his cell at FMC-Butner. Dr. Grover opined that defendant presently is suffering from schizophrenia, first episode, acute episode, which manifests itself in Mr. Sheikh's case via strange behavior, persecutory beliefs, and religious delusions. Although Dr. Grover attempted therapeutic treatment, Mr. Shaikh was uncooperative, and therapy was unsuccessful. She opined that Mr. Sheikh is likely to get worse without treatment and recommended involuntary medication.

Dr. Walden-Weaver, the forensic psychologist at FMC-Butner, testified that she also diagnosed Mr. Sheikh with schizophrenia and recommended psychiatric medication. Dr. Walden-Weaver also testified that if Mr. Sheikh was not medicated, she would recommend that he be evaluated for involuntary civil commitment pursuant to 18 U.S.C. § 4246. She further opined that his condition was degrading and he refused to come out of his cell, such that staff was unable to perform medical evaluations that might enable him to be housed in a less restrictive environment.

Dr. Williams, a forensic psychiatrist, testified that he agreed with the diagnosis of schizophrenia and also with the administration of involuntary medication. He agreed with Dr. Walden-Weaver that Mr. Sheikh's condition was deteriorating, rather than improving, over time. He explained that antipsychotic medication is a typical course of treatment for schizophrenia and that other treatment options that had been considered were unlikely to work. He cited two studies, a 1993 study by Ladd and colleagues, and a 2012 retrospective of 132 incompetent defendants in the United States Federal Court System. The Ladd study found that 81% of schizophrenic patients involuntarily medicated with antipsychotic medications were restored to competence. The 2012 retrospective noted that 76.5% of the incompetent defendants suffering from schizophrenia were successfully restored to competence, although it did not explicitly state

that they were treated with antipsychotic medication. Dr. Williams opined that Mr. Sheikh was unlikely to be compliant with voluntary medication, as he had refused all medical treatment. Further, he opined that use of less intrusive means, such as pills, posed a danger to both Mr. Sheikh and staff, in addition to a serious risk of noncompliance. He opined that therapy alone typically would not successfully treat schizophrenia, and in Mr. Sheikh's case, therapy alone was particularly unlikely to be successful because of Mr. Sheikh's refusal to comply with instructions. Dr. Williams stated that medication was a necessary step in Mr. Sheikh's treatment, as his condition prevented all communication with treatment providers and family, and antipsychotics would not only treat the illness but also help him communicate so he can receive other types of treatment, such as therapy.

Dr. Williams stated that his first choice of treatment would be Risperdol, but monitoring of its side effects requires laboratory testing, to which Mr. Sheikh to date has refused to consent. The proposed course of medical treatment is Haldol, an injectable antipsychotic medicine. Dr. Williams testified that he had specifically evaluated the medical propriety of administering Haldol to Mr. Sheikh. Dr. Williams testified that Mr. Sheikh first would receive a short-acting injection of Haldol to determine if he had any adverse effects. If none presented, he would then be given an injection every other week for 6 weeks. After that, he would be given a single injection every four weeks. Dr. Williams opined that such treatment was substantially likely to render Mr. Sheikh competent to stand trial.

Dr. Williams testified about the side effects of Haldol. Ten to fifteen percent of recipients develop Parkinsonian side effects within three to six weeks after treatment. These side effects typically respond well to Cogentin; if they do not, the treatment course would be modified, and these side effects are reversible. Some patients develop tardive dyskinesia, a serious and

potentially irreversible side effect that rarely occurs within the first six months of treatment, but then occurs at an incidence of 4% per year with a lifetime prevalence rate of approximately 30%. Reversal of this side effect is most likely when it is caught early. Dr. Williams testified that being in a secure hospital facility was more likely to result in early detection if this side effect did present. If Mr. Sheikh did develop side effects, Dr. Williams testified that the medical team would adjust the dosages or types of medications, or prescribed additional medications to treat the side effects, depending on what side effects presented.

Defendant presented no witnesses. With this background as well as the expert reports entered into evidence at the hearing in mind, the Court considers the government's request.

## DISCUSSION

In *Sell v. United States*, 539 U.S. 166 (2003), the Supreme Court concluded that the government may forcibly medicate a defendant in order to render him competent to stand trial. That conclusion is not without significant caveats, however. "[T]he forcible administration of antipsychotic medication constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Watson*, 793 F.3d 416, 419 (4th Cir. 2015) (quotation omitted). It may only be overcome by an "essential" or "overriding" state interest. *Sell v. United States*, 539 U.S. 166, 179 (2003). Accordingly, "forcible medication . . . is a tool that must not be casually deployed, and courts must be vigilant to ensure that such orders, which carry an unsavory pedigree, do not become routine." *Watson*, 793 F.3d at 419 (quotations omitted). In order to "minimize[] the risk of erroneous decisions in this important context," the government must meet a deliberately high standard before it can forcibly medicate a defendant solely to render him competent to stand trial. *United States v. Bush*, 585 F.3d 806, 814 (4th Cir. 2009). It must prove

each of the factors set forth by the Supreme Court in *Sell* by clear and convincing evidence. *United States v. White*, 620 F.3d 401, 410 (4th Cir. 2010).

"First, the government must show that *important* governmental interests are at stake and that special circumstances do not sufficiently mitigate those interests." *Id.* (emphasis in original) (quotation omitted). Second, involuntary medication must be "substantially likely" to render the defendant competent to stand trial and "substantially unlikely to have side effects that will interfere significantly with [his] ability to assist counsel." *Sell*, 539 U.S. at 181. Third, "involuntary medication must be necessary to further the government's interests, and less intrusive means must be unlikely to achieve substantially the same results." *White*, 620 F.3d at 410. Last, administration of drugs must be medically appropriate and in defendant's best medical interests in light of his medical condition. *Id.* The crux of this case is whether the government has a sufficiently important interest in prosecuting Mr. Sheikh such that interference by forced medication with his constitutionally protected liberty interest is justified, as measured against any special circumstances weighing against the asserted important governmental interests in bringing him to trial. *Sell*, 539 U.S. at 180.

*Prong One*

The Court first must consider whether there are important governmental interests at stake. *White*, 620 F.3d at 410. The crime here is serious. The Fourth Circuit has held that a crime is serious for involuntary medication purposes where the defendant faced a ten-year maximum sentence. *United States v. Evans*, 404 F.3d 227, 238 (4th Cir. 2005). If convicted, Mr. Sheikh faces a maximum penalty of fifteen years' imprisonment. Moreover, the crime with which he is charged is a crime of terrorism against the United States. By any rational standard, terrorism is a serious crime. Accordingly, there is no doubt of the government's important interest in bringing

Mr. Sheikh to trial, as the government's interest "in bringing to trial an individual accused of a serious crime is important." *Sell*, 539 U.S. at 180–81.

Special circumstances, however, can mitigate the government's important interest. *Id.* at 180. Case law provides examples, but no rigid definition of special circumstances; it is a case-specific, flexible inquiry. *White*, 620 F.3d at 42. It is axiomatic that "[t] he government's interest in prosecution is lessened when the defendant has already been confined for a significant amount of time for which he would receive credit toward any sentence ultimately imposed." *Id.* at 413–14. Other examples of special circumstances include the nature of the crime, *id.* at 419, public safety concerns, *id.*, an individual's unique medical condition, *id.* at 420, and whether an individual likely faces civil commitment under 18 U.S.C. § 4246, *Sell*, 539 U.S. at 181.

Mr. Sheikh has been in custody for approximately 23 months. He faces up to 180 months in custody and the government proffered that, if Mr. Sheikh is convicted, his advisory guideline sentence would be at or near the statutory maximum. It appears that the government may be correct. The offense with which Mr. Sheikh is charged, 18 U.S.C. § 2339B, dictates application of United States Sentencing Guideline § 2M5.3, which provides for a base offense level of 26. Even if no specific offense characteristics were applicable and Mr. Sheikh received a reduction for acceptance of responsibility, he would be looking at an advisory guideline range of 46 to 57 months (offense level 23, criminal history category 1). It seems likely, however, that the Chapter 3 enhancement for terrorism applies. *United States v. Hammoud*, 381 F.3d 316, 356–57 (4th Cir. 2004) (vacated and remanded on other grounds) (finding it appropriate to apply § 3A1.4 to a violation of § 2339B). Such enhancement would raise his offense level to 38 and his criminal history category to VI. U.S.S.G. § 3A1.4. Assuming he would qualify for acceptance of responsibility, the best case scenario would be an advisory guideline range of 292 to 365 months,

which is above the statutory maximum sentence of fifteen years. While 23 months is not an insignificant amount of time in custody, it is clear that the amount of time Mr. Sheikh has been in custody is not significant in light of either of the estimated sentences he faces if convicted. *See White*, 620 F.3d at 414; *Evans*, 404 F.3d at 239–40.

Moreover, the nature of the crime here is very serious—Mr. Sheikh is alleged to have provided material support to known terrorist organizations. The more serious a crime, the stronger the government's interest in prosecution, and the more likely involuntary medication is to be appropriate. *Compare Bush*, 585 F.3d at 806 (finding involuntary medication appropriate where defendant threatened a federal judge) and *Evans,* 404 F.3d at 232 (finding involuntary medication appropriate where defendant allegedly assaulted a United States employee) *with White*, 620 F.3d at 419 (finding involuntary medication inappropriate where defendant was charged with financial fraud crimes). While the precise manner in which he allegedly committed the crimes may have been non-violent, terrorism, by its nature, contemplates the physical harm of others. The crime of providing material support to terrorists is more similar to the crimes charged in *Bush* and *Evans*, than the crimes charged in *White*.

The only special circumstance that appears to militate against the government's interest is that Mr. Sheikh would be recommended for involuntary civil commitment pursuant to 18 U.S.C. § 4246. Accordingly, the chance that Mr. Sheikh would be released into the community and the government would lose its chance to prosecute him is minimal. No public safety concerns or unique medical conditions were addressed in the briefing or at the hearing, and the Court is unaware of any other special circumstances that would militate against the government's interest here.

Although the possibility of civil commitment does weigh against the government's interest in prosecuting Mr. Sheikh, it alone does not sufficiently mitigate that interest, particularly given the nature of the charges here. The Court finds that the government has proven that important governmental interests are at stake and that special circumstances do not sufficiently mitigate those interests.

*Prong Two*

In order to prove that involuntary medication will significantly further concomitant government interests, the government must prove that (1) "the administration of the drugs is substantially likely to render the defendant competent to stand trial;" and (2) "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Sell*, 539 U.S. at 181.

The record convincingly demonstrates that the government has satisfied this factor. Dr. Williams, the staff psychiatrist at FMC-Butner, testified that the recommended treatment with injectable Haldol would be substantially likely to render Mr. Sheikh competent to stand trial. Antipsychotic drugs are the normal course of treatment for psychotic disorders, specifically schizophrenia, and enjoy high rates of success. The Court notes that it is impossible to predict the occurrence of side effects with 100% accuracy; however, Dr. Williams's testimony established that the side effects are rare and most are treatable. Additionally, the experts at FMC-Butner also reported several contingency plans to address any side effects that arise, including decreases in medication dosage, use of adjunctive medications to manage side effects, or treatment with an alternative antipsychotic medication.

Moreover, although testimony established that some of the potential side effects might not play well to a jury, it did not establish that the side effects would interfere significantly with defendant's ability to assist counsel. The uncontradicted expert evidence before the Court is that treatment of Mr. Sheikh with antipsychotic medication would be substantially likely to render him competent to stand trial and substantially unlikely to have side effects that would interfere significantly with his ability to assist counsel in conducting a defense. Accordingly, the Court finds that the government meets the second prong under *Sell*.

*Prong Three*

The government must prove that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Sell*, 539 U.S. at 181. Other treatments discussed include psychotherapy, which Dr. Williams stated was unlikely to be effective because Mr. Sheikh is unable and/or unwilling to communicate with anyone at FMC-Butner, including his therapists. This conclusion is supported by the record, as well as by Mr. Sheikh's unwillingness or inability to respond to the Court's orders. Also discussed at earlier points and in the expert report was voluntary medication. To date, Mr. Sheikh has refused to take any medication, thus a voluntary medication regime is unlikely to be effective. Moreover, testimony established that medication is the most effective treatment for individuals with schizophrenia, and less-intrusive alternatives have not been shown to be effective in the absence of medication. There is no evidence before the Court to show that any less intrusive therapy would likely restore Mr. Sheikh to competence. Instead, the uncontradicted expert evidence before the Court is that there is no alternative, less intrusive treatment available that would likely restore Mr. Sheikh to competence.

*Prong Four*

Last, the government must prove that the administration of the recommended drugs is "medically appropriate." The Court must take into account that "[d]ifferent kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." *Sell*, 539 U.S. at 181. Dr. Williams, a psychiatrist, testified that administration of antipsychotics is the typical treatment for schizophrenia. He further opined that administration of Haldol to Mr. Sheikh is medically appropriate. While the Court notes that side effects are possible, this is true with any medication. The rates of side effects testified to by Dr. Williams do not make administration thereof medically inappropriate, particularly given the expert testimony that established that any adverse side effects that arise would be promptly treated or addressed with medication changes. Dr. Williams also testified that the proposed course of treatment was tailored specifically to Mr. Sheikh. He explained that Haldol was a more appropriate choice than Risperdol, for example, because Mr. Sheikh will not consent to the constant medical monitoring required under a Risperdol medication regime. Again, the Court heard no evidence to the contrary, and the evidence before the Court is that involuntary medication with Haldol is medically appropriate.

In sum, the Court finds that the government has met its burden, by clear and convincing evidence, to prove that the involuntary medication of Mr. Sheikh would significantly further the governmental interest in prosecuting him, in that the medication would be substantially likely to render him competent and substantially unlikely to cause side effects that would interfere significantly with Mr. Sheikh's ability to assist in his trial defense; that involuntary medication is necessary to further the governmental interests, in that alternative, less intrusive treatments are unlikely to restore Mr. Sheikh to competency; and the forced administration of antipsychotic

medication to Mr. Sheikh is medically appropriate. The Court further finds that Mr. Sheikh is charged with a serious crime, that the government's interest in protecting public safety, deterring similar crimes, and in prosecuting a person accused of a serious crime are important, and that there are no special circumstances present that mitigate that interest.

Accordingly, the government's motion is granted subject to the following conditions: 1) the medical staff at FCI-Butner shall provide Mr. Sheikh with a copy of this order; 2) FCI-Butner staff shall medicate in a manner consistent with the testimony given at the hearing and laid out in the May 21, 2015, report; 3) All medical personnel treating Mr. Sheikh shall first request that he voluntarily taken medication before each and every forced administration of medication; and 4) If Mr. Sheikh declines to voluntarily taken medication within ten days of this order for the first administration and within medically reasonable times to achieve the goal of the medical plans for all subsequent administrations, FCI-Butner staff is authorized to administer the medication by injection and with necessary force as described at the hearing.

The Court continues Mr. Sheikh's commitment under 18 U.S.C. § 4241(d)(1) for a period of no more than 120 days, or a lesser period if reasonably sufficient to restore him to competence. At the end of the 120 days, or whenever Mr. Sheikh's competence is restored, if sooner, the government is directed to file a report with the Court detailing the results of treatment. If the government concludes that Mr. Sheikh's competence has been restored, the report should state any side effects Mr. Sheikh has experienced and how these side effects would affect him in the preparation of his defense and during any court proceedings he attends.

## CONCLUSION

For the foregoing reasons, the government's motion for involuntary medication [DE 89] is GRANTED. At argument, defendant asked the Court to stay any order that permits the government to involuntarily medicate Mr. Sheikh. An order permitting the involuntary medication of a defendant is immediately appealable. *See Sell*, 539 U.S. at 177, *Evans*, 404 F.3d at 230. Accordingly, this order is STAYED pending resolution of Mr. Sheikh's anticipated appeal. The Clerk of Court is DIRECTED to send a copy of this Order to the Warden at FCI-Butner electronically and via regular mail.

SO ORDERED, this __13__ day of October, 2015.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE